Gary–Michael DAHL, an individual, Plaintiff,

v.

SWIFT DISTRIBUTIONS, INC. d/b/a Ultimate Support Systems, Inc., a California corporation; Michael Belitz, an individual; Robin Slaton, an individual; Does 1–20, inclusive, Defendants.

And Related Counterclaims.

No. CV 10–00551 SJO(RZX).

United States District Court, C.D. California.

Nov. 19, 2010.

---

John K. Buche, Sean Michael Sullivan, Buche & Associates PC, Mark A. Vasallo, Mark Vasallo PA, La Jolla, CA, for Plaintiff.

John W. Holcomb, Nicholas Matthew Zovko, Knobbe Martens Olson and Bear LLP, Riverside, CA, Craig S. Summers, Knobbe Martens Olson Bear LLP, Irvine, CA, for Defendants.

**ORDER GRANTING DEFENDANTS AND COUNTERCLAIMANTS' MOTION FOR SUMMARY ADJUDICATION OF NONINFRINGEMENT OF THE PATENTS–IN–SUIT**

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendants and Counterclaimants Swift Distribution, Inc. d/b/a Ultimate Support Systems, Inc. ("Ultimate"), Michael Belitz, and Robin Slaton's (collectively, "Defendants") Motion for Summary Adjudication for Noninfringement of the Patents–in–Suit ("Motion"), filed on October 4, 2010. Plaintiff Gary–Michael Dahl ("Plaintiff") filed an Opposition on October 8, 2010 ("Opposition"), which Defendants replied on October 18, 2010 ("Reply"). The Court held oral argument for the Motion on November 5, 2010. For the following reasons, Defendants' Motion for Summary Adjudication is GRANTED in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a professional musician who created a collapsible cart ("Cart") to move vast amounts of music, sound and video equipment quickly and easily. (Compl. ¶ 13.) The Cart is allegedly capable of being manipulated into eight different configurations, depending on the item to be transported. (Compl. ¶ 12.) Plaintiff owns two patents, United States Patent Nos. 5,476,282 ("'282 Patent") and 5,228,716 ("'716 Patent") (collectively, "Patents-in-Suit"), which are directed at a convertible transport cart. (Compl. ¶¶ 10, 11; Decl. of Thomas R. Bewley in Supp. of Opp'n ("Bewley Decl.") Exs. H, J.) Through various distributors, Plaintiff markets and sells the Cart for use in the music and broadcast industries. (Compl. ¶¶ 12, 13.)

Plaintiff alleges that Defendants manufacture, promote, and sell carts which are covered by the Patents–in–Suit ("Products") in the United States. (Compl. ¶ 22.) Plaintiff claims he first discovered in January of 2010 that Defendants were promoting the Products at the National Association of Music Merchants trade show.

(Compl. ¶¶ 17, 23.) Based on Defendants' alleged activities, on January 26, 2010, Plaintiff filed a lawsuit against Defendants for: (1) patent infringement; (2) trademark infringement; (3) unfair competition in violation of the Lanham Act; (4) trademark dilution; (5) false advertising in violation of California Business and Professions Code § 17500; (6) unfair competition in violation of Business and Professions Code § 17200; (7) unfair competition in violation of common law; (8) breach of contract; (9) promissory estoppel; (10) fraudulent inducement; (11) civil conspiracy; and (12) misappropriation of trade secrets. (*See generally* Compl.)

Soon after, Plaintiff filed an Application for Temporary Restraining Order and Preliminary Injunction ("Application") on February 12, 2010. (Docket No. 8.) The Court took the Application under submission and denied it on April 1, 2010, 2010 WL 1458957, because Plaintiff failed to demonstrate a likelihood of success on the merits of any of his claims or that he will suffer irreparable harm if the Application were not granted. (Order Denying Application 19:16–18.) Thereafter, at a scheduling conference on April 26, 2010, the parties agreed to set an earlier deadline for cross-motions for summary adjudication on patent infringement and invalidity. (Decl. of John W. Holcomb in Supp. of Mot. ("Holcomb Decl.") Ex. 18, at 10:4–9, 10:12–18, 12:14–19.) On August 23, 2010, Plaintiff filed a Motion for an Extension of Time to File Crossmotions for Summary Adjudication on Patent Infringement. (Docket No. 43.) The Court took that motion under submission and denied it because Plaintiff failed to show good cause for the extension. (Docket No. 70.) On October 4, 2010, Defendants filed the instant Motion, praying the Court to find that Defendants' activities do not infringe, either literally or under the doctrine of equivalents, any

claim of the Patents–in–Suit. (Mot. 20:16–19.)

## II. *LEGAL STANDARD*

### A. *Summary Adjudication*

Federal Rule of Civil Procedure ("Rule") 56(c) mandates that summary adjudication "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To meet its burden, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See id.* at 325, 106 S.Ct. 2548. Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party meets its initial burden, Rule 56(e) shifts the burden to the nonmoving party and requires it to "set out specific facts showing a genuine issue for trial" beyond those alleged in its pleading. Fed.R.Civ.P. 56(e); *see also Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (cita-

tion omitted). Further, "[o]nly disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment [and][f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (citation omitted).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part ... 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 1). "[S]ummary judgment under Rule 56 ... is entirely appropriate[ ] in a patent [case] as in any other case...." *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1116 (Fed.Cir.1985) (en banc). A court may enter summary adjudication on infringement issues alone even though other issues remain in the case. *See Syntex Pharm. Int'l, Ltd. v. K–Line Pharm., Ltd.,* 905 F.2d 1525, 1525–26 (Fed.Cir.1990). "[N]othing more is required [from an accused infringer] than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused [products] did not meet the claim limitations." *Exigent Tech., Inc. v. Atrana Solutions, Inc.,* 442 F.3d 1301, 1309 (Fed. Cir.2006). That being said, at the summary adjudication stage, a court does not make credibility determinations or weigh conflicting evidence. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

### B. *Infringement*

"An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995) (en banc) (citation omitted), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). "The second step is comparing the properly construed claims to the device accused of infringing." *Id.*

### 1. *Claim Construction*

■ Claim construction is a question of law for the Court. *Lighting World, Inc. v. Birchwood Lighting, Inc.,* 382 F.3d 1354, 1358 (Fed.Cir.2004). Under Federal Circuit precedent, there is a presumption that claim terms "mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art." *Texas Digital Sys., Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1202 (Fed.Cir.2002) (citation omitted). "It has [also] been long recognized in [Federal Circuit] precedent ... that dictionaries, encyclopedias and treatises are particularly useful resources to assist the court in determining the ordinary and customary meanings of claim terms." *Id.* (citation omitted).

Here, the parties agree that the Court does not need to construe any claim terms and that the plain and ordinary meaning applies. (Mot. 11:26–12:1; Holcomb Decl. Ex. 31.)

### 2. *Determination of Infringement*

■ Once the claims are properly construed, the Court may proceed to compare the Patents-in-Suit to the Products to determine whether the Defendants are guilty of patent infringement. *See Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1247 (Fed.Cir.2000). Patent infringement is a question of fact. *Id.* (citing *Insituform Techs., Inc. v. Cat Contracting, Inc.,* 161 F.3d 688, 692 (Fed.Cir. 1998)). "To prevail, the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or

more claims of the patent either literally or under the doctrine of equivalents." *Id.* (citation omitted); *see also Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

### i. Literal Infringement

■ "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s) ... If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG,* 212 F.3d at 1247 (internal citation omitted). A product that does not infringe an independent claim cannot literally infringe a claim that is dependent on that independent claim. *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1539 (Fed.Cir.1991) (citing *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1552 n. 9 (Fed.Cir.1989)).

### ii. Infringement by Equivalents

■ Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson,* 520 U.S. at 21, 117 S.Ct. 1040 (citation omitted). A claim element is equivalently present in an accused device only if insubstantial differences distinguish the missing claim element from the corresponding aspects of the accused device. *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed.Cir.1997) (citation omitted). Prosecution history estoppel, however, may bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution. *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,* 370 F.3d 1131, 1139 (Fed.Cir.2004) (en banc). "A patentee who narrow[ed] a claim as a condition for obtaining a patent disavow[ed] his claim to the broader subject matter ..." and must not be allowed to recapture what he relinquished. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo VIII),* 535 U.S. 722, 737, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).[1]

■ Estoppel may arise when an amendment is made to secure the patent,

---

1. Because of the importance of *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo I),* No. 88–1814 (D.Mass. Oct. 27, 1994), the Court takes time to clarify its procedural history. Initially, the Federal Circuit affirmed the judgment in *Festo I,* that the accused products infringed under the doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo II),* 72 F.3d 857, 868 (Fed.Cir.1995). The Supreme Court vacated that decision and remanded the case. *Shoketsu Kinzoku Kogyo Kabushiki Co. v. Festo Corp. (Festo III),* 520 U.S. 1111, 117 S.Ct. 1240, 137 L.Ed.2d 323 (1997). On remand, a panel of the Federal Circuit affirmed again the district court's judgment. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo IV),* 172 F.3d 1361 (Fed.Cir.1999). The Federal Circuit then granted a petition for rehearing en banc. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo V),* 187 F.3d 1381, 1381–82 (Fed.Cir.1999). Sitting, en banc, the Federal Circuit reversed the district court's judgment of infringement and held that no range of equivalents was available because narrowing amendments had been made. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo VI),* 234 F.3d 558, 588–91 (Fed.Cir.2000). The Supreme Court once again granted certiorari to review *Festo VI. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo VII),* 533 U.S. 915, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001). Then, the Supreme Court vacated and remanded the judgment of *Festo VI. Festo VIII,* 535 U.S. at 742, 122 S.Ct. 1831. On remand, the Federal Circuit reinstated the undisturbed en banc holdings of *Festo VI,* but remanded the case to district court. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo IX),* 344 F.3d 1359, 1366–67, 1374 (Fed.Cir.2003).

usually in response to an examiner's rejection, and to comply with any provision of the Patent Act. *See id.* at 733–34, 122 S.Ct. 1831. A voluntary amendment, not required by the examiner or made in response to a rejection by an examiner, may also give rise to estoppel if the voluntary amendment narrows the scope of a claim. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd. (Festo IX)*, 344 F.3d 1359, 1366 (Fed.Cir.2003). In these situations, when the patentee surrendered subject matter during patent prosecution, the Court must presume that the patentee is precluded from using the doctrine of equivalents. *See AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1325 (Fed.Cir.2007) (citations omitted). "[T]he rewriting of dependent claims into independent form coupled with the cancellation of the original independent claims [also] creates a presumption of prosecution history estoppel." *Honeywell*, 370 F.3d at 1134. Even when the Court is "unable to determine the purpose underlying a narrowing amendment," the Court is required to "presume that the patentee surrendered all subject matter between the broader and the narrower language." *Festo VIII*, 535 U.S. at 740, 122 S.Ct. 1831.

The patentee, however, may rebut this presumption by "demonstrat[ing] that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." *Festo IX*, 344 F.3d at 1368 (quoting *Festo VIII*, 535 U.S. at 740–41, 122 S.Ct. 1831). In rebutting the presumption, the patentee "is restricted to the evidence in the prosecution history record." *Id.* at 1367 (citation omitted).

Prosecution history estoppel is a matter to be determined by the Court. *Warner–Jenkinson*, 520 U.S. at 39 n. 8, 117 S.Ct. 1040. The Court is empowered to also resolve factual issues underlying the estoppel determination. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed.Cir.2009). The Court's determination of whether prosecution history estoppel applies is reviewed *de novo, Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed.Cir. 1998) (en banc), but the resolution of underlying factual issues will not be disturbed unless those findings were made in clear error, *DePuy Spine*, 567 F.3d at 1324 (citation omitted).

Lastly, Plaintiff misstates the law when he argues that "the trial judge does not have discretion to choose whether to apply the doctrine of equivalents," (Opp'n 7:2–6), because the Supreme Court has made abundantly clear that "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are *obliged* to grant partial or complete summary judgment." *Warner–Jenkinson*, 520 U.S. at 39 n. 8, 117 S.Ct. 1040 (emphasis added and citation omitted). The Court not only has the discretion, but is in fact required to grant summary adjudication in any case where no reasonable fact finder could find equivalence even if equivalence is a factual matter normally reserved for the jury. *See Sage Prods.*, 126 F.3d at 1423.

## III. DISCUSSION

### A. The '716 Patent

In his Complaint, Plaintiff alleged that Defendants' Products infringe the '716 Patent literally or equivalently. (Compl. ¶ 34.) Defendants contend that, as a matter of law, the Products do not literally infringe two claim limitations in the '716

Patent. Specifically, Defendants argue that the Products neither have a "flexible cord" nor handles that "move along" the axle members of the cart. (Mot. 12:14–15:23.) Defendants also argue that Plaintiff may not assert infringement under the doctrine of equivalents for the two claim limitations because Plaintiff narrowed the claims during prosecution and surrendered the subject matter. (Mot. 17:1–21.) In his Opposition, Plaintiff concedes that at least one claim limitation is "not literally present," but alleges that no narrowing amendments were made during the prosecution of the '716 Patent. (Opp'n 13:5, 17:20–25.)

1. *The Products Do Not Literally Infringe the '716 Patent Because They Do Not Have a Flexible Cord Attached to Their Handles.*

■■■ As aforementioned, the parties agree that the Court does not need to construe any claim terms and that the plain and ordinary meaning applies. (Mot. 11:26–12:1; Holcomb Decl. Ex. 31.) The parties are also in accord that the plain and ordinary meaning of a "cord" is "a string or thin rope made of several strands braided, twisted, or woven together." (Bewley Decl. ¶ 28 (citing DICTIONARY.COM, RANDOM HOUSE DICTIONARY (2010), *available at* http://dictionary.reference.com/browse/cord).) All of the '716 Patent's independent claims contain the limitation that a "flexible cord" or a "cord" be connected to the handles of the cart. (*See* Bewley Decl. Ex H 8:38, 9:35–36, 10:32; *see also* Mot. 12:15–16.)

Although ambiguously stating so, Plaintiff concedes that the accused Products do not have a "cord" attached to the handles of the cart.[2] (Opp'n 13:5 (stating "although not literally present"); *see also* Bewley Decl. ¶ 29 ("[I]t is my opinion that a cord element is not literally present in the Accused Products.")) Because the "cord" limitation is absent from the Products, there can be no literal infringement of the independent claims in the '716 Patent. *See Bayer AG,* 212 F.3d at 1247. Moreover, because the Products do not infringe any of the independent claims in the '716 Patent, they cannot literally infringe the dependent claims. *See London,* 946 F.2d at 1539.

Accordingly, the Court GRANTS Defendants' Motion for Summary Adjudication that the Products do not literally infringe Plaintiff's '716 Patent. Because Plaintiff's literal infringement claim as to the '716 Patent can be adjudicated conclusively on the absence of the "cord" limitation, the Court need not analyze the presence or absence of the second limitation, which relates to handles that "move along" the axle members of the cart.

2. *Plaintiff Is Estopped From Asserting the Doctrine of Equivalents Because the Amendments Made During the Prosecution of the '716 Patent Narrowed the Subject Matter Covered by the Claims.*

i. *The Amendments Made, Even if Voluntarily, Created a Presumption of Prosecution History Estoppel.*

■■■ Plaintiff misstates the facts in arguing that his amendments were voluntary

---

**2.** The Court notes that Plaintiff never definitely abandons his claim that the Products literally infringe the '716 Patent (*see* Opp'n 10:24–12:8), even though his own expert witness declares otherwise (Bewley Decl. ¶ 29). Plaintiff could have stipulated to dismissal of the literal infringement claim. Plaintiff also could have clearly abandoned his claim in his Opposition or notified the Defendants prior to their filing the instant Motion. Any one of these acts would have saved the Court from expending its limited time and resources. Instead, Plaintiff continues to pursue claims without merit. (*See* Opp'n 20:23–24 (requesting the Court to deny Defendants' Motion "in its entirety").) Plaintiff quickly loses tremendous credibility by conducting such gamesmanship.

and that they did not narrow the issued version of the claims. (Opp'n 10:7–11, 17:3–4.) Plaintiff admits that he "amended the originally filed independent claims to include a limitation originally set forth in the dependent claims...." (Opp'n 16:24–26.) The prosecution history reveals that these amendments were made "to obtain an early allowance of [the '716] [P]atent." (Holcomb Decl. Ex. 10, at 8.) In the first Office Action, the Examiner rejected the original independent claims because they were either anticipated by or obvious in light of prior art. (Bewley Decl. Ex. I 3–4.) The Examiner explained that he would allow dependent Claims 9, 16, and 20 if they were "rewritten in independent form." (*Id.* at 4.) Dependent Claims 9, 16, and 20 contained either a "flexible cord" or "cord" limitation. (Holcomb Decl. Ex. 8, at 19, 21, 22.) The rejected original claims did not. (*Id.* at 17, 20, 21.) At the Examiner's direction, Plaintiff "amended the [original] independent claims ... so as to incorporate the limitations of dependent Claims 9, 16, [and] 20."[3] (Bewley Decl. Ex. I 7, 9, 10, 13.) Only after Plaintiff incorporated further limitations into the independent claims, thereby narrowing the subject matter of the claims, did the Examiner issue a Notice of Allowance. (*See* Holcomb Decl. Ex 11.) Plaintiff's "decision to forgo an appeal [of the rejection] and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim[s]." *Festo VIII*, 535 U.S. at 735, 122 S.Ct. 1831. Therefore, a presumption of prosecution history estoppel is appropriate because Plaintiff's narrowing amendments were made to satisfy the concerns over prior art. *See id.* at 736, 122 S.Ct. 1831.

The Court finds *Honeywell International Inc. v. Hamilton Sundstrand Corp.,* 370 F.3d at 1141, controlling and persuasive for the case at hand. In *Honeywell,* the examiner had rejected independent claims as obvious in light of prior art during the prosecution of the plaintiff's patents. *Id.* at 1137. The examiner, however, indicated that dependent claims would be allowed if rewritten into independent form. *Id.* In response, the rejected independent claims were cancelled and the dependent claims were amended to include limitations from those rejected claims. *Id.* The dependent claims contained an "inlet guide vane" limitation that the independent claims did not. *See id.* The Federal Circuit, sitting en banc, held that a presumptive surrender of all equivalents to the inlet guide vane limitation existed because that limitation was effectively added to the claimed invention. *Id.* at 1144 (11–1 decision) (Newman, J., dissenting).

Here, Plaintiff made narrowing amendments in the same manner that the plaintiff in *Honeywell* did. When the Examiner rejected the original independent claims in light of prior art and stated that he would allow dependent Claims 9, 16, and 20 in independent form (Bewley Decl. Ex. I 3–4), Plaintiff amended the independent claims to include the "cord" limitation (*id.* at 7, 9, 10, 13). The addition of that limitation, by its very nature, narrowed the subject matter covered by the independent claims, which was needed to secure the patent. *See Honeywell,* 370 F.3d at 1144. As in *Honeywell,* a presumption of prosecution history estoppel exists. *See id.*

Moreover, assuming, *arguendo,* that the amendments to the claims were made voluntarily, the Court is still required to presume that the amendments narrowed the subject matter claimed. Contrary to Plaintiff's assertions, the Federal Circuit, sitting en banc, held that "a 'voluntary'

---

**3.** Plaintiff incorporated the limitations of Claims 9, 16, and 20 into independent Claims 1, 13, and 17, respectively. (Bewley Decl. Ex. I 13.)

amendment may give rise to prosecution history estoppel." *Festo IX*, 344 F.3d at 1366 (reinstating its holding in *Festo VI*, 234 F.3d at 568 ("[A] voluntary amendment that narrows the scope of a claim for a reason related to the statutory requirements for a patent will give rise to prosecution history estoppel as to the amended claim element.")). Thus, even if the "Examiner never objected to the flexible cord term, or required further narrowing ..." (Opp'n 17:2–3), Plaintiff's voluntary amendments that incorporated the limitations of the dependent claims into the independent claims created a presumption of estoppel. *See Festo IX*, 344 F.3d at 1366.

At the November 5, 2010 hearing, Plaintiff uncompromisingly argued that prosecution history estoppel may only arise when a narrowing amendment is made in response to a "statutory rejection." Plaintiff's counsel defined "statutory rejections" as rejections by the Examiner to claims based on 35 U.S.C. §§ 102, 103, and 112. Plaintiff characterized the Examiner's response to original dependent Claims 9, 16, and 20 as an "objection" rather than a "statutory rejection." Plaintiff could not differentiate the case at hand from *Honeywell*, 370 F.3d at 1141, but argued that *Funai Electronic Co. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1369 (Fed.Cir. 2010), controlled because the amendments were not "unequivocal surrendering" of the subject matter.

Plaintiff's legal arguments are squarely contrary to Federal Circuit precedent. Plaintiff provided no legal authority in support of his contention that estoppel is only appropriate when a narrowing amendment is made in response to a "statutory rejection." The Court has also been unable to locate a single Federal Circuit case where the term "statutory rejection" has been used in connection with prosecution history estoppel. In fact, the Supreme Court has

stated otherwise, that "even if [an] amendment's purpose were unrelated to patentability, the court might consider whether it was the kind of reason that nonetheless might require resort to the estoppel doctrine." *Festo VIII*, 535 U.S. at 735, 122 S.Ct. 1831 (citation omitted).

The Court reemphasizes that *Honeywell*, 370 F.3d at 1141, controls this action. Indeed, it is telling that Plaintiff, when given the opportunity, could not differentiate the Federal Circuit's en banc decision in *Honeywell*. Were the Court to put aside *Honeywell's* persuasive and binding holding, however, the Court would still reach the same conclusion that the amendments adding the "cord" limitation constitute narrowing amendments that give rise to estoppel. In *Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1326 (Fed.Cir. 2003), the Federal Circuit held that the patentee was presumptively barred from arguing infringement under the doctrine of equivalents. In that case, the examiner rejected an independent claim under 35 U.S.C. § 103 and "object[ed]" to another claim "because it depended from [the] rejected claim...." *Id.* at 1325. The patentee then proceeded to delete the original independent and dependent claims and add a new independent claim that incorporated the limitation from the deleted dependent claim. *Id.* at 1319 (describing the new independent claim as the dependent claim "rewritten in independent form"). The limitation was present in the original dependent claim. *Id.* at 1318–19. The Federal Circuit held that, "[w]hile [the patentee] argues that it merely rewrote an allowable original claim ... in independent form, there is no question that the claim was narrowed by the deletion of a broad original claim in favor of a claim that contained the [limitation in the dependent claim]." *Id.* at 1326. Those same facts are present before the Court. Therefore,

Plaintiff is sorely mistaken; his narrowing amendments in response to "objections" from the Examiner do give rise to presumptive estoppel.

Plaintiff's reliance on *Funai*, 616 F.3d at 1369, is misplaced. The Court duly notes that, at first blush, a tension does seem to exist between *Funai* and *Honeywell*, 370 F.3d at 1141. In *Funai*, an original dependent claim was rewritten in independent form and the original independent claims were cancelled. *See Funai*, 616 F.3d at 1369. The original independent claims had been rejected on the ground of obviousness. *Id.* The Federal Circuit held that the limitation from the original dependent claim "was not a factor in the allowance" and "not at issue during prosecution." *Id.* Thus, the court held that the limitation was "merely tangential" to the prosecution and there was no surrender to equivalents. *Id.* Firstly, were there to be a true conflict between *Funai* and *Honeywell*, the Court would have to resolve the conflict in favor of *Honeywell*, which was decided by the Federal Circuit en banc. *See Honeywell*, 370 F.3d at 1141 (11–1 decision). The vitality of *Honeywell* is further supported by the fact that the *Funai* court had the opportunity to overrule *Honeywell*, but did not do so. *See Funai*, 616 F.3d at 1369. Moreover, *Honeywell's* holding has consistently been upheld by the Federal Circuit. *See, e.g., Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp. (Honeywell II)*, 523 F.3d 1304, 1316 (Fed.Cir.2008). Secondly, the seeming tension between the two cases need not be resolved by the Court because *Funai* is differentiable from the case at hand. In *Funai*, the Federal Circuit held that estoppel was inappropriate because the patentee had successfully rebutted the presumption of estoppel by showing the tangentiality of the limitation. *See Funai*, 616 F.3d at 1369. Here, Plaintiff made no such showing. *See infra* III.A.2.ii. *Funai* provides no protection from presumptive estoppel.

Accordingly, a presumption of prosecution history estoppel exists and it is Plaintiff's burden to rebut the presumption.

### ii. Plaintiff Fails to Rebut the Presumption.

Plaintiff utterly fails to meet his burden to rebut the presumption of prosecution history estoppel for the '716 Patent. *See Warner–Jenkinson*, 520 U.S. at 33, 117 S.Ct. 1040 ("[T]he better rule is to place the burden on the patent holder ...."); *see also Festo IX*, 344 F.3d at 1368 ("[T]he Supreme Court made clear that the patentee bears the burden of showing that a narrowing amendment did not surrender a particular equivalent...."). Plaintiff made no attempts in his Opposition to assert that the alleged equivalent to the "flexible cord"—the rigid release bar— would have been unforeseeable at the time of the narrowing amendment or that there was some other reason suggesting that Plaintiff could not reasonably have been expected to describe it. *See Festo VIII*, 535 U.S. at 741, 122 S.Ct. 1831; (*see also* Opp'n 16:22–17:25.) Plaintiff also does not properly allege that the narrowing amendment was tangential or peripheral to the alleged equivalent. (*See id.* (no mention of tangentiality).)[4] Accordingly, the Court

---

4. Plaintiff argues that no "narrowing amendments" were made during the prosecution of the '716 Patent. (Opp'n 16:23–28.) This is an argument pertaining to whether a presumption of estoppel arises, not whether the narrowing amendments were *tangential* to the equivalent at issue. *See Honeywell II*, 523 F.3d at 1315 ("[T]he tangential relation criterion focuses on the patentee's objectively apparent reason for the narrowing amendment.") (citation and internal quote omitted). In contrast, Plaintiff asserts the tangential defense against prosecution history estoppel for the '282 Patent, as noted by the Defendants at

holds that Plaintiff fails to rebut the presumption of estoppel and GRANTS Defendants' Motion for Summary Adjudication that the Products do not infringe the '716 Patent under the doctrine of equivalents.

### B. *The '282 Patent*

In addition to the '716 Patent infringement claims, Plaintiff alleged that Defendants' activities infringe the '282 Patent literally or equivalently. (Compl. ¶ 40.) In their Motion, Defendants assert that the Products do not literally infringe the '282 Patent because it does not satisfy a limitation contained in Claim 1, the only independent claim of that patent. (Mot. 18:1–4.) Defendants allege that Claim 1 of the '282 Patent requires the handles to be "pivotally connected" to the "side frame members" of the cart, whereas the Products' handles are "pivotally connected" to the "ends of the frame." (*Id.* at 18:3–20.) Defendants also posit that Plaintiff may not assert infringement under the doctrine of equivalents because Plaintiff narrowed Claim 1 of the '282 Patent during prosecution and surrendered the subject matter covering the equivalent at issue. (Opp'n 20:5–14.) Conspicuously missing from Plaintiff's Opposition is any mention of his claim that the Products literally infringe the '282 Patent. (*See* Opp'n 17:26–20:21.) Plaintiff, however, argues that the narrowing amendment was tangential. (Opp'n 20:3–5.)

#### 1. *The Products Do Not Literally Infringe the '282 Patent Because Their Handles Are Pivotally Connected to the End Frames.*

Claim 1 of the '282 Patent contains the limitation that the handles of the cart be "pivotally connected to ... side frame members ... adjacent end frame member...." (Holcomb Ex. 7, at 11:16–22.) The plain and ordinary meaning of "side" is "one of the longer bounding surfaces or lines of an object esp[ecially] *contrasted with the ends* ...." Merriam–Webster's Collegiate Dictionary 1086 (10th ed.2002) (emphasis added). As Plaintiff's own expert declares, the Products "have U-shaped handles which pivotally connect to the end frame members rather then [sic] to the side frame members; thus, this claim element is not literally infringed by the [Products]."[5] (Bewley Decl. ¶ 56.) Because the Products do not contain the "connected to side frame members" limitation of Claim 1, the Products cannot literally infringe the '282 Patent as a matter of law. *See Bayer AG*, 212 F.3d at 1247. The Products similarly cannot literally infringe the dependent claims of the '282 Patent because they do not literally infringe Claim 1, the sole independent claim of the '282 Patent. *See London*, 946 F.2d at 1539. Accordingly, the Court GRANTS Defendants' Motion for Summary Adjudication that the Products do not literally infringe the '282 Patent.

the November 5, 2010 hearing. (*See* Opp'n 18:27–20:21.) The Court must therefore conclude that Plaintiff's decision to not assert the tangentiality rebuttal defense was a conscience choice. The Court finds that Plaintiff abandoned the rebuttal defenses as to the '716 Patent, and thus, fails to meet his burden to rebut the presumption of estoppel.

5. The Court again admonishes Plaintiff for failing to stipulate or clearly demonstrate in

his Opposition that the Products cannot literally infringe the '282 Patent. The Court finds incredible that Plaintiff is unwilling to concede his literal infringement claim relating to the '282 Patent when his own expert declares that the claim is without merit. (*See* Bewley Decl. ¶ 56.) Only after pointed questioning by the Court at the November 5, 2010 hearing did Plaintiff unambiguously concede there is no merit to his literal infringement claims.

2. *The Products Do Not Equivalently Infringe the '282 Patent Because Plaintiff Is Unable to Rebut That He Is Presumptively Estopped from Recapturing Subject Matter Plaintiff Surrendered During Prosecution.*

i. *Plaintiff Made Narrowing Amendments That Created a Presumption of Prosecution History Estoppel.*

The Supreme Court has held that "if a [35 U.S.C.] § 112 amendment is necessary and narrows the patent's scope—even if only for the purpose of better description—estoppel may apply." *Festo VIII*, 535 U.S. at 737, 122 S.Ct. 1831.

The prosecution record makes evident that Plaintiff made narrowing amendments to Claim 1 of the '292 Patent. Indeed, Plaintiff concedes that he made amendments "in response to a rejection" by the Examiner pursuant to 35 U.S.C. § 112. (Opp'n 20:3–4.) The original Claims 1 and 17 were independent and included the limitation "a first handle connected to said frame adjacent one end of said frame." (Bewley Decl. Ex. K 8–9.) In an Office Action, the Examiner rejected original Claims 1 and 17 because the claims were "indefinite for failing to particularly point out and distinctly claim the subject matter which [Plaintiff] regards as the invention." (*Id.* at 17.) The Examiner expressly stated that "it is unclear as to which portion of the frame is being referred to" when Plaintiff stated that the handle was connected to "one end of said frame." (*Id.*) In response, Plaintiff "amended [original] Claims 1 and 17 so as to properly define the coplanar relationship between the side frame members and one handle...." (*Id.* at 26.) The Plaintiff also held an interview with the Examiner in which they decided that "Claim 1 would be rewritten to define the relationship between the handles and the side...." (*Id.* at 33.) Thus, the prosecution history

shows definitively that Plaintiff had to disavow the equivalent at issue—connection to the end frame—in order to have the patent issued by the Examiner. Accordingly, Plaintiff is presumptively estopped from asserting infringement by equivalents for the '282 Patent.

ii. *The Narrowing Amendment Made by Plaintiff During the Prosecution of the '282 Patent Was Not Tangential to the Equivalent at Issue.*

Plaintiff's characterization of the narrowing amendment as tangential to the equivalent at issue is unconvincing. Plaintiff sought to claim broad subject matter when he first described the limitation as "a first handle connected to said frame adjacent one end of said frame." (Bewley Decl. Ex. K 8–9.) A truism in patent law is that a patentee will attempt to describe the invention in broad terms in order to make it difficult to design around the issued patent or to challenge claims of infringement. That is exactly what the Plaintiff attempted to do; he wanted the '282 Patent to cover all products with handles that connected to one end of the cart's frame. The Examiner deemed the claim limitation indefinite and rejected the overly broad language. (*Id.* at 17.) Plaintiff made a conscience decision to narrow the limitation to handles that connect to the side of the cart's frame. (*Id.* at 26.) Therefore, the narrowing amendment is directly related to the equivalent at issue. To get the patent issued, Plaintiff narrowed the claim limitation and surrendered coverage over handles that are connected to the end frames.

Plaintiff's remaining arguments fail to rebut the presumptive estoppel. His allegation that he "could have used any variety of descriptions in order to meet [the] requirement for patentability without limiting the location of the handles" is una-

vailing. (Opp'n 20:15–17.)[6] Plaintiff "had a clear opportunity to negotiate broader claims but did not do so … [;] it is the [Plaintiff] who must bear the cost of [his] failure to seek protection for this foreseeable alteration of its claimed structure." *Sage Prods.*, 126 F.3d at 1425 (affirming a district court finding of no infringement literally or equivalently) (citations omitted). Indeed, Plaintiff does not point to any support in the prosecution history to aid his tangentiality argument. "If the prosecution history reveals no reason for the narrowing amendment, the presumption [of estoppel] is not rebutted. Silence does not overcome the presumption." *Honeywell II*, 523 F.3d at 1315–16 (internal citation omitted). Lastly, the fact that Defendants failed to cite legal authority is irrelevant. (Opp'n 18:27–28.) To meet their initial burden for a motion for summary adjudication, Defendants only need to "point[ ] out to the district court—that there is an absence of evidence to support [Plaintiff's] case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Defendants did precisely that.

Plaintiff is unable to rebut the presumption of prosecution history estoppel for the '282 Patent. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Adjudication that the Products do not infringe the '282 Patent under the doctrine of equivalents.

## IV. *RULING*

Defendants' Motion for Summary Adjudication of Noninfringement of the Patents–in–Suit is hereby **GRANTED** in its entirety. Defendants' activities do not infringe, either literally or under the doctrine of equivalents, any claim of the '716 and '282 Patents. The Court reminds the parties that the Scheduling Order of April 26, 2010 remains in effect. The Discovery Cut–Off date is **January 12, 2011** and the Motion Hearing Cut–Off date is **February 28, 2011.**

IT IS SO ORDERED.

---

6. At the November 5, 2010 hearing, Plaintiff reiterated the argument that he should not be bound by his voluntary limitation of the invention. As already explained by the Court, the Federal Circuit has made clear that voluntary narrowing amendments "will give rise to prosecution history estoppel as to the amended claim element." *See Festo VI*, 234 F.3d at 568.